UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL REIFF,

      Plaintiff,

v.

BROC SETTY and CLINTON
TOWNSHIP,

      Defendants.

Case No. 23-10513
Honorable Laurie J. Michelson

---

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [46] AND DENYING WITHOUT
PREJUDICE PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' LATE
EXPERT [48]**

---

In April of 2021, Daniel Reiff was going to do a freelance roofing job. On the way, he and his coworker for the day, a man named Ryan, stopped at Ryan's house to pick up some tools. As they walked through the neighborhood, a neighbor got suspicious and called the police, reporting that she did not recognize the two "younger-looking kids." When police arrived near Ryan's home, Reiff decided to leave and walk to the nearby bus stop. Eventually, a police officer caught up to Reiff and tried to speak with him. Reiff took off running.

This case is about what happened next. Officer Broc Setty of the Clinton Township Police Department got out of his car and chased Reiff through the neighborhood on foot. Eventually, Officer Setty reached Reiff, grabbing his shirt as the pair stumbled over a fence. Reiff told Officer Setty that he was "done"—he was not trying to flee. Officer Setty then maneuvered Reiff so that he was on his hands

and knees and repeatedly yelled for Reiff to get on his stomach. When Reiff did not comply, Officer Setty grabbed Reiff's wrist, turned him over, and punched him in the face. The force of Officer Setty's punch was so strong it caused Reiff's eyeball to rupture, causing permanent blindness.

Accordingly, Reiff brought this 42 U.S.C. § 1983 lawsuit alleging that Officer Setty violated his Fourth Amendment rights by using excessive force to arrest him. (ECF No. 1, PageID.6.) Reiff also sued the Clinton Township Police Department for "failure to train, authorize, encourage or direct [Officer] Setty on the proper use of force." (*Id.* at PageID.7.) Now before the Court is the Defendants' motion for summary judgment (ECF No. 46) and Reiff's motion to strike Defendants' late expert (ECF No. 48). The motions are fully briefed and do not require further argument. *See* E.D. Mich. L.R. 7.1(f).

## I.

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if the evidence permits a reasonable jury to return a verdict in favor of the nonmovant, and a fact is "material" if it may affect the outcome of the suit. *See Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the nonmovant, Reiff. *See Raimey v. City of Niles*, 77 F.4th 441, 447 (6th Cir. 2023).

There is, however, "an added wrinkle" in a case like this—that is, a case where video footage depicts the incident in question. *Scott v. Harris*, 550 U.S. 372, 378 (2007). In those cases, the Court must still draw all inferences in favor of the nonmovant but may also consider the facts as depicted in the video footage. *See Rudlaff v. Gillispie*, 791 F.3d 628, 639 (6th Cir. 2015). In doing so, the Court "view[s] the facts in the light depicted by the videotape," *Scott*, 550 U.S. at 391, but "any relevant gaps or uncertainties left by the videos" must be viewed in the light most favorable to Reiff, *LaPlante v. City of Battle Creek*, 30 F.4th 572, 578 (6th Cir. 2022) (quoting *Latits v. Phillips*, 878 F.3d 541, 544 (6th Cir. 2017)). Accordingly, the Court recites what is depicted by Officer Setty and Officer Hackstock's body camera footage, supplemented where needed by the record viewed in the light most favorable to Reiff—especially because the blurred nature of the video footage precludes the Court from having a perfect view of the punch at issue.

## A. Admissibility of Police Reports

Before the Court can summarize the facts of this case, it must deal with a threshold issue: whether the Court can consider the reports of various Clinton Township police officers (ECF No. 46-6 (Exhibit E)) in deciding the motion for summary judgment. Reiff says the Court cannot, citing Federal Rule of Civil Procedure 56(c)(2), which provides that a party can object to material cited in a motion for summary judgment if the material "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *see also Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997) ("Rule 56 requires the [movant]

to present evidence of evidentiary quality that demonstrates the existence of a genuine issue of material fact. . . The proffered evidence need not be in admissible *form*, but its *content* must be admissible."). According to Reiff, the police reports attached to Defendants' summary judgment motion are inadmissible hearsay because they "include[] not only the officer's own observations but also statements made by third parties." (ECF No. 49, PageID.2958.) Thus, Reiff says, they "cannot be used to support or dispute a fact at the summary judgment stage." (*Id*. at PageID.2959.)

In reply, Defendants say that these reports are admissible at this stage of litigation because "a police report that contains a police officer's first-hand observations is covered by the public record exception to hearsay at FRE 803(8)." (ECF No. 53, PageID.3778 (citing *Dortch v. Fowler*, 588 F.3d 396 (6th Cir. 2009).) More specifically, Defendants say that the reports of the officers are exempt from the hearsay rule under 803(8)(A)(ii) because the reports contain "matters observed pursuant to duty imposed by law as to which matters there was a duty to report." (*Id*. (quoting *Dortch*, 588 F.3d at 402)); *see* Fed. R. Evid. 803(8)(A)(ii) (stating that a "record or statement of a public office" can be admissible as an exception to the rule against hearsay if it "sets out" a "matter observed while under a legal duty to report.").

True, narrative reports of police officers can qualify as public records under Federal Rule of Evidence 803(8). *See, e.g.*, *Baker v. Elcona Homes Corp.*, 588 F.2d 551, 556 (6th Cir. 1978); *Dortch*, 588 F.3d at 402–405; *Fischer v. United States*, 608 F. Supp. 3d 533, 539 (E.D. Mich. 2022). But the Sixth Circuit and the district courts

within it have been clear that "[t]he Rule 803(8) exception generally does not apply to . . . reproductions of statements made by . . . other persons, which continue to be inadmissible hearsay." *Avery v. Neverson*, No. 18-11752, 2023 U.S. Dist. LEXIS 33072, at *27 (E.D. Mich. Feb. 28, 2023); *see Tranter v. Orick*, 460 F. App'x 513, 514 (6th Cir. 2012) (affirming the district court's finding that a police department investigative report was inadmissible because it contained witness statements that could not be considered at summary judgment); *Nowell v. City of Cincinnati*, No. 03-859, 2006 WL 2619846, at *5 (S.D. Ohio Sept. 12, 2006) (excluding portions of a report summarizing four eyewitness statements because "[t]he statements of these eyewitnesses are not matters observed pursuant to duty imposed by law as the witnesses themselves had no legal duty to observe the incident involving Nowell nor to make a statement to the police regarding their observations" (internal quotation omitted)).

Here, some of the narrative summaries of the Clinton Township officers include statements made by third parties. Defendants offer no argument as to why these statements would be admissible under the Federal Rules of Evidence. Accordingly, at this stage of litigation, the Court will consider the police reports (ECF No. 46-6)—as they are admissible as public records under Federal Rule of Evidence 803(8)(A)(ii)—but will not consider any statements made by third parties within the reports, as those statements are inadmissible hearsay.

## B. Factual Background

On April 2, 2021, Daniel Reiff was on his way to do a roofing job. He had his girlfriend's father drop him off at the bus stop (ECF No. 46-4, PageID.2069) and then traveled to meet up with his coworker for the day, Ryan (*id.* at PageID.2070). But before Reiff and Ryan got to their work site, they needed to stop at Ryan's house to pick up some tools. (*Id.* at PageID.2071.) So they both got off the bus at the 16 Mile & Gratiot stop near Ryan's home. (*Id.* at PageID.2072.)

As Reiff and Ryan exited the bus and walked towards Ryan's home, a neighbor called the police. The caller reported that she saw "two younger looking kids, walking. They came up the road, [and] they walked through the neighbor's yard." (ECF No. 46-7, PageID.2211.) She explained that the reason she was calling was because she is usually home "every day," the two individuals "definitely [did] not look familiar," and "something just [didn't] seem right." (*Id.*) Dispatch assured her that it would "go ahead and have them checked out." (*Id.* at PageID.2213.)

While at Ryan's house, Reiff saw police cruisers driving down the street. Reiff, worried that there might have been a warrant out for his arrest due to unpaid child support, began to walk back toward the bus stop. (ECF No. 44-6, PageID.2074.) In Reiff's words, he was "not trying to hang around." (*Id.*) As Reiff was walking, Officer Adam Hackstock pulled up next to him. Officer Hackstock asked Reiff "where [he was] coming from," to which Reiff responded that he was just "walking down the road." (ECF No. 46-8, PageID.2217.) As Reiff began to walk away, Officer Hackstock twice yelled at Reiff to "come here." (*Id.*)

6

Reiff then took off running. Officer Hackstock's body worn camera shows Reiff crossing the Metro Parkway and running into a neighborhood to get away from the police. Officer Hackstock then radioed to dispatch that a suspect had run away. (ECF No. 46-8, Video Ex. G, Hackstock Body Cam, 00:10–00:17.) Officers in multiple patrol cars in the area were then dispatched to search for Reiff. One of these officers was Officer Setty, the named defendant.

At some point, Officer Setty found Reiff walking down the street. (ECF No. 46-11, PageID.2309–2311.) He yelled at Reiff to "come here" (ECF No. 46-9, Video Ex. H, Setty Body Cam, 03:43–03:45), got out of his car, and began to chase after Reiff on foot (*id.* at 03:46; ECF No. 46-11, PageID.2312).

Officer Setty's body camera captured most of what happened next. Reiff again began running away, crossing through backyards and jumping at least two fences. (Video Ex. H, 03:46–04:13.) As Officer Setty was in pursuit, he shouted to Reiff, "I'm going to tase you. I'm going to tase you, dude. Yeah, baby, woooo! Come here!" (*Id.* at 03:57–04:01.)

Eventually, Officer Setty caught up to Reiff. Officer Setty tried to grab Reiff's arm and jacket as he jumped over a fence. (*Id.* at 04:13; ECF No. 46-10, PageID.2239; ECF No. 52, PageID.3094–3097.) This action caused Reiff to fall onto the ground, landing on his back. (Video Ex. H, 04:16–04:18.) When Reiff fell to the ground, he exclaimed, "I'm done." (*Id.* at 04:06.) As Officer Setty loomed over Reiff, Reiff recalls being scared and nervous. (ECF No. 46-4, PageID.2081–2083.) And he "didn't [want to] get hurt," so he stopped trying to get away. (*Id.* at PageID.2083.)

At this point, Reiff said at least three more times "I'm done, I'm done, I'm done" and raised his hands near his head. (Video Ex. H, 04:16–04:19; ECF No. 46-4, PageID.2084; ECF No. 53, PageID.3207.) Officer Setty then yelled at Reiff to "turn around" and grabbed Reiff to flip him onto his stomach. (Video Ex. H, 04:19–04:21; *see also* ECF No. 52, PageID.3282–3438.) Reiff remained on the ground, resting on his hand and knees.

Officer Setty yelled at Reiff several times to get on his stomach, imploring him to "get on your f***ing stomach now. Get on your stomach, or I'm going to punch you." (Video Ex. H, 04:21–04:23.) Seconds later, the video appears to show Officer Setty holding Reiff's right wrist (*id.* at 04:33), flipping him over from his position on the ground to his back, and punching him in the left eye (*id.* at 04:34). That punch was forceful enough to rupture Reiff's left eyeball, resulting in permanent blindness in that eye. (ECF No. 49, PageID.2973–2974; ECF No. 53-2, PageID.3799.)

## II.

Reiff argues that Officer Setty violated his Fourth Amendment right to be free from unreasonable search and seizure by using excessive force to arrest him. (ECF No. 1, PageID.6.) In response, Officer Setty argues that Reiff has failed to establish any constitutional violation, thus entitling him to qualified immunity. (ECF No. 46, PageID.1899–1900.)

Qualified immunity prevents liability for government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To defeat a qualified immunity defense, "a plaintiff must establish (1) that the defendant violated a 'constitutional right' and (2) that the right 'was clearly established.'" *Leary v. Livingston County*, 528 F.3d 438, 441 (6th Cir. 2008) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). District courts may address these two questions "in any order." *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).

Although "entitlement to qualified immunity is a threshold question to be resolved at the earliest point," *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023), qualified immunity should not be granted where "the legal question of qualified immunity turns upon which version of the facts one accepts . . . . This is especially true considering that the District Court must view the facts in the light most favorable to the plaintiff on a motion for summary judgment," *Sova v. City of Mount Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998) (citations omitted). Specifically, "summary judgment is inappropriate where there are contentious factual disputes over the reasonableness of the use of . . . force." *Id.*

### A. Constitutional Violation

Start with the constitutional right at issue. The Fourth Amendment's ban on unreasonable seizures bars police officers from using excessive force when making an arrest. *See Graham v. Connor*, 490 U.S. 386, 394 (1989).

Here, Defendants argue that "[f]actually and directly on-point case law makes clear that the single strike [Officer Setty used] under the circumstances was a reasonable use of force as a matter of law." (ECF No. 46, PageID.1881.) Reiff

9

disagrees. (ECF No. 49, PageID.2978–2982.) He argues that Officer Setty's use of force was unreasonable because, among other things, Reiff was not armed, did not resist arrest, and posed no threat to Officer Setty or anyone else. (*Id.*)

To determine whether an officer's use of force in effecting an arrest is excessive in violation of the Fourth Amendment, a court must determine "whether the officers' actions are 'objectively reasonable.'" *Graham,* 490 U.S. at 397. The inquiry into the reasonableness of police force requires analyzing the "totality of the circumstances." *Tennessee v. Garner*, 471 U.S. 1, 9 (1985). While "there is no easy-to-apply legal test or on/off switch in this context," *Barnes v. Felix*, 145 S. Ct. 1353, 1358 (2025) (cleaned up), three important but non-exhaustive factors generally guide the analysis: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight, *Graham*, 490 U.S. at 396; *see Goodwin v. City of Painesville*, 781 F.3d 314, 321 (6th Cir. 2015). In all, the Court's inquiry remains whether the totality of the circumstances justified the defendant's particular seizure of the plaintiff, *see Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006), that is, whether Officer Setty's use of force was reasonable as "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *Graham*, 490 U.S. at 396.

The first *Graham* factor—the severity of the crime that Reiff allegedly committed—weighs heavily in Reiff's favor. "Conduct that is not a violent or serious crime does not permit an officer to use increased force absent other factors."

*Vanderhoef v. Dixon*, 938 F.3d 271, 277 (6th Cir. 2019) (finding that this factor weighed in a plaintiff's favor when the defendant was "aware of only some reckless driving by plaintiff"); *see Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006) ("[T]he fact that a plaintiff in a § 1983 suit had committed no crime clearly weighed against a finding of reasonableness.").

When the police were initially called, Reiff had committed no crime. (ECF No. 46-11, PageID.2250–2252.) And Officer Setty had no reason to believe otherwise. All he knew from the initial dispatch call was that there were two "younger-looking kids" walking through people's backyards. (*Id.* at PageID.2304–2305.) The caller who reported Reiff and Ryan did not claim that she saw either of them engage in any specific criminal activity—just that "something . . . [didn't] seem right." (ECF No. 46-7, PageID.2211.) Defendants highlight that Reiff eventually pled no contest[1] to a resisting and obstruction charge following his arrest in this case. But that is not relevant to the inquiry here. Instead, the question under the first *Graham* factor is whether at the time of the force in question, Officer Setty had reason to believe that Reiff had committed a severe crime that would justify the degree of force he used. *See, e.g.*, *Martin*, 712 F.3d at 958. He did not.

Defendants emphasize that Reiff was running through a "known drug zone" and that this alone "constitutes reasonable suspicion for officers to stop him." (ECF No. 46, PageID.1890 (citing *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000)).) First, that

---

[1] Defendants actually say that Reiff pled guilty. (ECF No. 46, PageID.1887.) But, as explained below, Reiff pled no contest. (ECF No. 46-17, PageID.2804–2805, 2807.)

articulation again misstates the issue—the question is not whether Officer Setty had reasonable suspicion to stop Reiff, but rather whether the degree of force Officer Setty used when he did stop Reiff was justified.[2] Second, Defendants are wrong on the law. The Supreme Court has explicitly found that "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Wardlow*, 528 U.S. at 124 (citing *Brown v. Texas*, 443 U.S. 47 (1979)). So the first *Graham* factor weighs in Reiff's favor.

The second factor—whether Reiff posed an immediate threat to the safety of the officers or others—also weighs in Reiff's favor. Officer Setty, by his own admission, had no reason to believe that Reiff was armed. (ECF No. 46-1, PageID.2251–2253.) When asked during his deposition whether he could "articulate a reasonable suspicion that Daniel Reiff was armed," he responded that "at the time [Reiff] ran, no." (ECF No. 46-11, PageID.2253.) And at no point during the arrest did he see Reiff reach for any sort of weapon.

Likewise, at no point during the interaction did Reiff hit, yell at, or threaten Officer Setty. *See Carpenter v. Bowling*, 276 F. App'x 423, 426 (6th Cir. 2008) (finding that plaintiff posed no threat to the arresting officer in part because she was not threatening the officer, raising her voice, or angry). If anything, video footage and

---

[2] As an aside, the Court will also note that Officer Setty testified that he did not know at the time that there was a drug house in the area where he apprehended Reiff. (ECF No. 46-11, PageID.2386 ("Q. Did you know about the drug house that was in the neighborhood? A. No, sir.").)

Reiff's deposition testimony suggest that Reiff was simply terrified during the interaction. (ECF No. 46-4, PageID.2082 ("It was a scary—it was the scariest part of my life.").) In contrast, Officer Setty, in his own words, did not "think [his] life was at risk at the time" of the interaction. (ECF No. 46-11, PageID.2264.) Nevertheless, Officer Setty still chose to punch Reiff in the eye hard enough to cause permanent blindness. *Cf. Michalski v. Sonstrom*, 773 F. App'x. 299, 300 (6th Cir. 2019) ("[W]hile not dispositive, [plaintiff's] injury is suggestive of excessive force."). So the second *Graham* factor weighs in Reiff's favor.

And finally, the third factor—whether Reiff actively resisted arrest or attempted to evade arrest by fleeing—is more neutral but does not warrant summary judgment. True, Reiff ran away from Officer Hackstock and Officer Setty to evade arrest. But once he was apprehended, he tried to make clear that he was surrendering. (ECF No. 46-4, PageID.2079 (Q. And then you said the police, they're still coming for you, so you just stopped? A. They're jumping fences and so I was like, okay, I put my hands up and said I'm done. I give up.").) So the question for this Court to resolve is, once Reiff had stopped running and was on the ground, whether he continued to actively resist arrest such that Officer Setty was justified in punching him in the eye.

Active resistance includes "physically struggling with, threatening, or disobeying officers." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495 (6th Cir. 2012) (collecting cases). It does not include, however, being "compliant or hav[ing] stopped resisting," *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 509 (6th Cir.

2012), or having "done nothing to resist arrest," *Cockrell*, 468 F. App'x at 496. Moreover, simply not complying or being slow to comply with an officer's command is not active resistance. Indeed, "[i]f there is a common thread to be found" in the Sixth Circuit's "caselaw on this issue, it is that noncompliance alone does not indicate active resistance; there must be something more." *Eldridge v. City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013).

Defendants assert "it is undisputed that Reiff was actively resisting arrest at the time" that Officer Setty punched him in the eye and that video footage confirms it. (ECF No. 46, PageID.1892.) They go on to describe what they claim Officer Setty's body camera footage shows:

> Reiff's actions included: pulling away from Officer Setty which caused Officer Setty to crash to the ground from the fence, trying to ram Officer Setty with his shoulders, staying up on all fours, breaking a wristlock, and even getting into a standing position postured to take out Officer Setty at the knees.

(*Id.* at PageID.1893.) Defendants continue that "it simply does not matter that Reiff *said* he was giving up when his actions were to the contrary" and that this Court is not required to "credit any inaccurate contemporaneous commentary that clearly contradicts what can be seen on video." (*Id.* (cleaned up).) Later in their brief, Defendants double down, stating that "[w]hen a suspect's version of events presents as 'visible fiction' in light of the dash-cam videos, the Court may not rely on the plaintiff's bald allegations to find the existence of a material question of fact." (*Id.* at PageID.1898 (quoting *Scott*, 550 U.S. at 381).)

The problem for the Defendants is that Reiff's version of events is not "so utterly discredited by the record that no reasonable jury could . . . believe[] him." *Scott*, 550 U.S. at 380. The Court watched the video of Reiff's arrest. But it does not see Officer Setty "crash to the ground." It does not see Reiff "trying to ram Officer Setty with his shoulders." And it does not see Reiff "getting into a standing position postured to take out Officer Setty at the knees." So the Court disagrees that the video footage indisputably confirms Officer Setty's version of events.

The Court is not even sure Officer Setty confirms his counsel's version of events. For example, in his deposition testimony Officer Setty never describes Reiff trying to "ram him" with his shoulders. Nor does Officer Setty testify that Reiff was attempting to "take [him] out" at the knees. For his part, Reiff also describes this event quite differently. For example, after Officer Setty jumped over the fence, Reiff recalls Setty "scream[ing]" at him "to get on the ground"—which Reiff says he did. (ECF No. 46-4, PageID.2088.) Reiff describes laying on the ground while Officer Setty put one or both of his knees into his back. (*Id.*) Reiff says that he tried telling Officer Setty that he could not breathe and that he needed to lift his head up to get air (*id.* at PageID.2089)—which is confirmed by the video footage (Video Ex. H, 04:30–04:32). As they were laying in the grass, says Reiff, he turned his head to get a breath, and Officer Setty struck him in the eye. (ECF No. 46-4, PageID.2090.)

Using their interpretation of what was caught on video, Defendants rely on cases which they say support their position that Reiff actively resisted arrest. None are comparable.

15

For example, in *Hagans v. Franklin Cnty. Sheriff's Off.,* officers responded to a disturbance call and were met with a shirtless man in a cocaine-induced rage running through the neighborhood. 695 F.3d at 507. The man tried to get into a police cruiser by yanking on the driver's side door and was subsequently wrestled to the pavement. *Id.* While on the ground, the man "refused to be handcuffed," "lock[ing] his arms tightly under his body, kicking his feet and continuing to scream." *Id.* The Sixth Circuit found that the officer's use of a taser to subdue the man so that police could successfully handcuff him was a reasonable use of force. *Id.* at 511. But here, far from the "out of control" suspect in *Hagans*, *id.*, Reiff was a nonviolent suspect who did not try to steal a police car. And Reiff did not "lock[] his arms tightly under his body"— nor did he "kick" or "scream" at Officer Setty as he tried to cuff Reiff. So *Hagans* is inapposite.

Likewise, in *Williams v. Ingham*, police used force to arrest a man after he ignored "several commands to show his hands" and exit his vehicle. 373 F. App'x 542, 544 (6th Cir. 2010). Then, as police attempted to remove him from the vehicle, the man "moved toward the center of the vehicle and reached for the console," causing the officers to fear he was reaching for a weapon. *Id.* And after officers used force to pull the man from his vehicle, he still "struggled" and "ke[pt] his hands concealed underneath his body" to avoid behind cuffed. *Id.* Of course, there is no allegation in this case that Reiff had or ever reached for a weapon. Nor is there evidence that Reiff tried to hide his hands beneath his body. Instead, video footage shows Reiff originally

16

raised his empty hands over his head before Officer Setty maneuvered them behind Reiff's back. So *Williams* too is inapposite.

Thus, because Reiff's alleged "noncompliance was not paired with any signs of verbal hostility or physical resistance," it "cannot be deemed active resistance." *See Eldridge*, 533 F. App'x at 535. So the third *Graham* factor also weighs more in Reiff's favor.

As a final note, Defendants suggest, in two sentences, that "Reiff is precluded from arguing he was not actively resisting Officer Setty pursuant to *Allen* where the Supreme Court . . . held that defendants in § 1983 case[s] may invoke criminal proceedings as collateral estoppel." (ECF No. 46, PageID.1894); *see Allen v. McCurry*, 449 U.S. 90, 103–105 (1980). Defendants say that because "Reiff pled guilty to Resisting & Obstructing" arrest in connection with this case, he is now estopped from arguing he did not actively resist Officer Setty. (ECF No. 46, PageID.1894.) But Defendants' argument suffers from a fatal flaw. Reiff did not plead guilty to resisting and obstruction—he pled no contest. (ECF No. 46-17, PageID.2804–2805, 2807.) And that distinction matters.

Federal courts apply state law when determining whether a § 1983 claim is barred by collateral estoppel. *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001). Under Michigan law, a no contest plea is not considered "actual litigation" for purposes of collateral estoppel. *Lichon v. Am. Universal Ins. Co.*, 459 N.W.2d 288, 298 (Mich. 1990). At least two judges in this district have come to the same conclusion in analogous cases. *See Gorney v. Charter Twp. of Brownstown*, No. 14-12731, 2016 U.S.

Dist. LEXIS 116892, at *14 (E.D. Mich. Aug. 31, 2016) (finding that plaintiff was not "collaterally estopped from pursuing an excessive force claim against Defendants" when he "accepted a nolo contendere plea, otherwise known as pleading no contest" in a state court proceeding); *Shirley v. City of Eastpointe*, No. 11-14297, 2013 U.S. Dist. LEXIS 124169, at * 15–17 (E.D. Mich. Aug. 30, 2013) (same); s*ee also Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010) (applying Michigan law). Thus, Reiff's no contest plea does not preclude him from now arguing that he did not actively resist arrest in this § 1983 lawsuit.

In sum, taking the facts in the light most favorable to Reiff, the Court finds that because (1) Reiff had not committed a serious offense, (2) did not pose an immediate threat, and (3) was not actively resisting arrest, Officer Setty used an unconstitutionally unreasonable amount of force during Reiff's arrest when he punched Reiff in the eye, rupturing Reiff's eyeball. Accordingly, Officer Setty is not entitled to summary judgment on the issue of whether he violated Reiff's constitutional right to be free from excessive force.

## B. Clearly Established

Defendants also argue that, even if Officer Setty did violate Reiff's Fourth Amendment rights, summary judgment is still warranted because Reiff did not have a "clearly established right to be free from the use of non-deadly force by police" when he "fled from [the] police." (ECF No. 46, PageID.1900.)

A right is clearly established if "[t]he contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates

that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The purpose of this requirement is to ensure that officers are put on notice as to what conduct is constitutionally permissible. Put differently, "the *sine qua non* of the 'clearly established' inquiry is 'fair warning.'" *Baynes v. Cleland*, 799 F.3d 600, 612–13 (6th Cir. 2015) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Thus, the task for this Court is to decide whether "the contours of the right at issue" have been made sufficiently clear to give a reasonable officer "fair warning that the conduct at issue was unconstitutional." *Id.* at 613. In doing so, this Court need not look for a case directly on point or a factual twin. Instead, the Court "must identify analogous caselaw clearly establishing that an officer's specific force violated the Fourth Amendment under the circumstances." *Farris v. Oakland County*, 96 F.4th 956, 965 (6th Cir. 2024) (citing *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021)).

While Defendants frame the right in question as whether police had the right to use force to apprehend a fleeing suspect, at the time Officer Setty employed force, Reiff had surrendered. Video footage shows Reiff on the ground exclaiming "I'm done" multiple times. (Video Ex. H, 04:16–04:19.)

So, taking the facts in the light most favorable to Reiff, the question is whether it would have been apparent to a reasonable officer standing in Officer Setty's shoes at the time that punching Reiff in the eye as he laid on the ground, not actively resisting arrest, was a Fourth Amendment violation. *Cf. Wright v. City of Euclid*, 962 F.3d 852, 869 (6th Cir. 2020) (finding that the district court erred by "incorrectly fram[ing] the issue" based on the officer's version of events when the district court

"instead should have considered whether the law was clearly established using [the plaintiff's] version of the facts"). The Court finds that the answer is yes.

Put simply, "the right to be free from physical force when one is not resisting the police is a clearly established right." *Kijowski v. City of Niles*, 372 F. App'x 595, 601 (6th Cir. 2010) (quoting *Wysong v. City of Heath*, 260 F. App'x 848, 856 (6th Cir. 2008)). Several cases are instructive on this point—the Court will detail just a few. Take *Baker v. City of Hamilton*, 471 F.3d 601 (6th Cir. 2006). There, like here, a plaintiff was walking down the street when a police cruiser pulled up next to him and asked him to stop. *Id.* at 603. But the plaintiff kept walking. *Id.* There, like here, the arresting officer opened his car door and the plaintiff "took off running." *Id.* And there, like here, when the police eventually found the plaintiff, he "surrendered." *Id.* But the arresting officer then hit the plaintiff on the side of his head, "opening a wound that eventually required stiches." *Id.* In light of these facts, the Sixth Circuit found for the plaintiff under the clearly established prong, reasoning that "cases in this circuit clearly establish the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest." *Id.* at 608 (quoting *Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 F.3d 681, 688 (6th Cir. 2006)). Similarly, in *Brown v. Chapman*, 814 F.3d 447 (6th Cir. 2016), the Sixth Circuit found that a plaintiff had a clearly established right "not to be tasered, after having broken away from police officers but while not threatening others or actively resisting arrest." *Id.* at 461; *see id.* at 462.

20

The Sixth Circuit has also found that various types of force applied after a suspect has been "subdued" are unreasonable and a violation of the clearly established Fourth Amendment right to be clear from excessive force. *See, e.g.*, *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002) ("[T]here was simply no governmental interest in continuing to beat Phelps after he had been neutralized, nor could a reasonable officer have thought there was."); *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) ("[A] totally gratuitous blow with a policeman's nightstick may cross the constitutional line."); *Lewis v. Downs*, 774 F.2d 711, 715 (6th Cir. 1985) ("The unprovoked and unnecessary striking of a handcuffed citizen in the mouth with a nightstick is clearly excessive."). Here, video shows that Reiff was on the ground, without access to any weapons, when Officer Reiff used the force in question. In other words, with Officer Setty's knees resting on Reiff's back (ECF No. 46-4, PageID.2089), and Reiff exclaiming that he was "done" running, Reiff was subdued—he wasn't going anywhere.[3]

Accordingly, the Court finds that Officer Setty is not entitled to qualified immunity as a matter of law. Reiff's Fourth Amendment claim against Officer Setty survives summary judgment.

---

[3] The Court recognizes that a viewer cannot see Officer Setty's knees in the video. Reiff testified that Officer Setty put one or both of his knees into his back. (ECF No. 46-4, PageID.2089.) During his deposition, Officer Setty recalled "putting [his] body weight on top of [Reiff]." (ECF No. 46-11, PageID.2290.) In any event, the Court must fill in "any relevant gaps or uncertainties left by the video" with the facts in the record viewed in the light most favorable to Reiff. *See LaPlante*, 30 F.4th at 578.

# III.

Next, Reiff brings a § 1983 claim against Clinton Township pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). (ECF No. 1, PageID.7–9.) His complaint states two separate, but related, theories of liability.

First, Reiff argues that Clinton Township "failed to properly train, authorize, encourage or direct Setty on the proper use of force." (*Id.* at PageID.7.) More specifically, Reiff says that Clinton Township failed to adequately train Officer Setty "on fundamental policing concepts such as reasonable suspicion, probable cause, teamwork, de-escalation, use of less lethal force, and tactical planning." (ECF No. 49, PageID.2988.) "In the alternative," says Reiff, Officer Setty "acted in conformance with Clinton Township policy or practice of imposing unnecessary and excessive force." (ECF No. 1, PageID.8.)

To prevail in a § 1983 suit against a municipality—like Clinton Township—"a plaintiff must show that the alleged violation occurred because of a municipal policy, practice, or custom; a municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'" *Chapman*, 814 F.3d at 462 (quoting *Monell*, 436 U.S. at 694). Thus, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact," thereby showing the necessary "policy or custom" to establish § 1983 liability under *Monell*. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). To make out his failure to train claim, Reiff must show: "(1) that [Clinton Township's] training program is inadequate

to the tasks that the officers must perform; (2) that the inadequacy is the result of [Clinton Township's] deliberate indifference; and (3) that the inadequacy is closely related to or actually caused [Reiff's] injury." *Rayfield v. City of Grand Rapids*, 768 F. App'x 495, 511 (6th Cir. 2019). Regarding the second element, a plaintiff most commonly demonstrates a municipality's deliberate indifference by pointing to a failure to act "in response to repeated complaints of constitutional violations by its officers." *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 287 (6th Cir. 2020) (quoting *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003)). But a plaintiff can rely on a single incident to establish liability in a narrow range of circumstances "if the risk of the constitutional violation is so obvious or foreseeable" that it amounts to deliberate indifference for the municipality to fail to prepare its officers for it. *Id.* (citing *Connick v. Thompson*, 563 U.S. 51, 63 (2011)).

Defendants say that Officer Setty was properly trained. (ECF No. 46, PageID.1901.) They provide the Court with Officer Setty's training file, which details all the training Officer Setty underwent before and during his employment with Clinton Township and confirms that he received training in "Fair & Impartial Policing: De-escalation" from Clinton Township. (ECF No. 46-22, PageID.2871.) Officer Setty also testified that he was required to do scenario-based trainings every month. (ECF No. 46-11, PageID.2259.) Preston Susalla, Administrative Captain of the Clinton Township Police Department, testified that the department has a use-of-force policy (ECF No. 46-19), that when Officer Setty started he was given a copy of the policy, and that the policy is generally available for review on all computers at

23

the police station (ECF No. 46-14, PageID.2580). Captain Susalla also testified that, at the time of his deposition, the Township was voluntarily going through a state accreditation process to ensure their policies were aligned with best practices. (*Id.* at PageID.2635–2636 ("Q. What is the accreditation going to do for Clinton Township? A. Good question. It's supposed to just show that the department is up to best practices, staying consistent with training and . . . operations.").)

To support his claim, Reiff highlights that during his deposition Officer Setty could not describe Clinton's use of force policy. (ECF No. 49, PageID.2988; *see* ECF No. 46-11, PageID.2259 ("Q. Can you describe the Clinton Township's use of force policy for me? A. I can't without looking at it, no, sir.").) Likewise, Officer Setty testified that Clinton Township did not teach him de-escalation techniques (ECF No. 46-11, PageID.2274) and that he did not recall the "objective reasonableness" standard from *Graham v. Connor* (*id.* at PageID.2260).

The Court finds that these allegations alone do not rise to the level of deliberate indifference. If anything, the record supports a finding that Clinton Township had a use of force policy, required its officers to review it, and required its officers to do regular trainings regarding use of force. True, a jury will determine whether Officer Setty used excessive force in this case. But "the wrongful conduct of a single officer without any policymaking authority"—such as Officer Setty—"[does] not establish municipal policy" such that the municipality itself can be subject to § 1983 liability. *Collins v. City of Harker Heights*, 503 U.S. 115, 121–22 (1992).

24

Reiff's second theory of *Monell* liability—that Clinton Township had a policy or custom of allowing its officers to use excessive force on a regular basis—fares no better. Indeed, the Court finds nothing in this record to support that theory. To the contrary, the police department's use of force policy details what it calls the "force continuum." (ECF No. 46-19.) In essence, it explains the levels of resistance that an officer might encounter in dealing with a suspect and the corresponding level of force that an officer may use to counteract that resistance. (*Id.* at PageID.2840–2846.) Relevant here, the policy states that "hard empty-hand control"—like an "open hand" or "fist" strike—may be permissible to counter a suspect who is trying to escape or being actively aggressive. (*Id.* at PageID.2843.) The policy defines "escape resistance" as occurring when a person is "[p]hysically resisting the officer's attempt at control by direct, overt, physical actions" and defines "active aggression" as occurring when "[t]he subject attacks the officer to defeat attempts at control." (*Id.* at PageID.2840.) It specifies that these use of force techniques are applied when "lower forms of control have failed or when not applicable because the subject's resistance level was at a perceived dangerous level." (*Id.* at PageID.2843.) It also says that "[p]referably, the target points of these types of strikes will be delivered to major muscle masses such as the leg, arms, shoulders, or side of the neck" so that "the strikes will create muscle cramping, thus inhibiting muscle action." (*Id.*)

So here, it is not that the Township had a formal policy of allowing its officers to use excessive force, but rather that the Township had an explicit use of force policy that Officer Setty merely did not abide by in this case.

To the extent that Reiff is suggesting that the Township had an informal policy "so permanent and well settled as to constitute a custom or usage with the force of law" of allowing its officers to disregard the formal written policy, *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988), Reiff does not make such a showing. Indeed, Reiff makes no allegations about, let alone offers proof of, "a pre-existing pattern of violations," *Ouza*, 969 F.3d at 295, or about any officer other than Officer Setty, *see Black v. City of Royal Oak*, No. 23-12371, 2024 U.S. Dist. LEXIS 167469, at *37 (E.D. Mich. Sept. 17, 2024) ("In short, [Plaintiff] cannot establish a custom solely by pointing to the facts of his own case.") (internal quotation omitted).

Accordingly, the Court will dismiss Reiff's § 1983 claim against Clinton Township.

## IV.

That leaves Reiff's motion to strike the Defendants' late expert. (ECF No. 48.) According to Reiff, Defendants failed to timely disclose the name and information of Denis J. Pierce, an expert in Forensic Video Technology. (*Id.* at PageID.2942.) As far as the Court can tell, however this expert's role would be to simply enhance the relevant video footage in this case and authenticate that version of the video under Federal Rule of Evidence 901. It does not appear that Pierce would provide substantive testimony about Reiff's surviving claim.

Under the Court's most recent scheduling order, Defendants' expert disclosure deadline was August 4, 2024. (ECF No. 34.) Reiff says that Defendants failed to meet that deadline—instead waiting until over a month later to disclose Pierce.

Accordingly, Reiff says that the Court should strike Pierce as an expert and preclude him from testifying at trial. For their part, Defendants essentially concede that they disclosed Pierce late. (ECF No. 51, PageID.3040 ("[I]t is only the name and curricula vitae of Defendants' video enhancement expert which was disclosed shortly after the expert disclosure deadline because it was at that time that counsel for Defendants determined that the frame-by-frame work product of Mr. Pierce would be helpful.").)

So assuming Pierce will be providing testimony, the question for this Court is whether to excuse the violation under Federal Rule of Civil Procedure 37(c)(1). Under that rule, if a party fails to disclose information required by Rule 26(a) "the party is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Defendants do not levy any argument as to why their delay was justified, let alone substantially justified. Indeed, this Court already extended discovery three times. (ECF Nos. 22, 34, 38.)

That said, the Court finds that this untimely disclosure is harmless. The harm according to Reiff is that he "has not had an opportunity to depose Mr. Pierce or retain a rebuttal expert in response to his proposed testimony" and that "the trial is rapidly approaching, and allowing this expert testimony would significantly disrupt the trial preparation process." (ECF No. 48, PageID.2944.) But in light of the Defendants' pending motion for summary judgment, the Court has yet to schedule a final pre-trial conference or trial date. Accordingly, the Court will deny the motion without prejudice at this time. *See, e.g.*, *Mitsui Sumitomo Ins. Co. of Am. v. Vertiv Corp.*, No.

23-1398, 2024 U.S. Dist. LEXIS 121058, at *5 (S.D. Ohio July 10, 2024) (collecting cases). Following this order, the Court will schedule a status conference with the parties to discuss the need for this expert witness as well as whether Reiff will need the opportunity to depose and rebut the witness prior to trial.

## V.

For the foregoing reasons, the Court DENIES IN PART Defendants' motion for summary judgment (ECF No. 46) as it relates to Reiff's excessive force claim against Officer Setty and GRANTS IN PART the Defendants' motion as to Reiff's *Monell* claim against Clinton Township. Only Reiff's claim against Officer Setty may proceed, and Clinton Township is hereby DISMISSED from this case. The Court also DENIES WITHOUT PREJUDICE Reiff's motion to strike Defendants' late expert (ECF No. 48).

IT IS SO ORDERED.

Dated: August 13, 2025

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE