UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL REIFF,

     Plaintiff,

v.

BROC SETTY and CLINTON
TOWNSHIP,

     Defendants.

Case No. 23-10513
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION
FOR COSTS AND FEES [117], DENYING CLINTON TOWNSHIP'S
MOTION FOR COSTS AND FEES [114], DENYING DEFENDANTS'
MOTION TO STRIKE [128], AND GRANTING DEFENDANT'S MOTION
TO REVIEW TAXATION OF COSTS [123]**

---

In March 2023, Daniel Reiff filed this 42 U.S.C. § 1983 suit against Clinton Township and one of its police officers—Broc Setty—seeking compensation for injuries he sustained after Setty punched him during an arrest and ruptured his eyeball. (ECF No. 1.) After significant discovery and unsuccessful efforts to resolve the case, Defendants filed a motion for summary judgment (ECF No. 46), which the Court granted as to the Township but denied as to Setty (ECF No. 55). Then, following extensive pre-trial proceedings, in December 2025, the Court held a seven-day jury trial on the Fourth Amendment excessive force claim against Setty. The jury returned a verdict for Reiff, awarding him $4 million in compensatory damages and $50,000 in punitive damages. (ECF No. 107.) Setty filed a notice of appeal. (ECF No. 116.)

Lawyers for both Reiff and Clinton Township now seek compensation for their work on the case. Currently pending are several motions related to the allocation of fees: Clinton Township's Motion for Costs and Fees (ECF No. 114), Reiff's Motion for Costs and Fees (ECF No. 117), Setty's Motion for Review of Taxed Costs (ECF No. 23), and Defendants' Motion to Strike ECF Nos. 117 and 127 (ECF No. 128).

The Court is very familiar with the case. The briefing is beyond extensive. And resolution of the issues is more about putting pen to paper than hearing oral argument. *See* E.D. Mich. LR 7.1(f). For the reasons that follow, Reiff's motion for fees is granted in part and denied in part, Clinton Township's motion for fees is denied, Setty's motion for review of taxed costs is granted, and Defendants' motion to strike ECF Nos. 117 and 127 is denied.

## I. 42 U.S.C. § 1988

Federal law allows the prevailing party in § 1983 civil rights cases to recover their attorney's fees. 42 U.S.C. § 1988(b) ("the [district] court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."). When the prevailing party is the plaintiff, "the Supreme Court has read [§ 1988] as mandatory," absent "special circumstances." *Hescott v. City of Saginaw*, 757 F.3d 518, 532 (6th Cir. 2014). But if the prevailing party is the defendant, § 1988 only permits an award of fees "upon a finding by the district court that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Kidis v. Reid*, 976 F.3d 708, 721–22 (6th Cir. 2020) (cleaned up). Said another way:  a winning § 1983 plaintiff is generally entitled to reasonable fees, but

2

a winning § 1983 defendant must show that the plaintiff's action was meritless to earn such an award.

Separately, a party can seek attorney's fees as a sanction for their opponent's misconduct in all manner of federal cases pursuant to 28 U.S.C. § 1927. That law provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id.* While this does not require a showing of bad faith, this Circuit has found that sanctions pursuant to § 1927 are appropriate only where the attorney's misconduct exceeds "simple inadvertence or negligence that has frustrated the trial judge." *Holmes v. City of Massillon*, 78 F.3d 1041, 1049 (6th Cir. 1996).

Reiff seeks attorney fees as the prevailing plaintiff pursuant to § 1988. Clinton Township seeks fees under § 1988 based on its success on summary judgment and additionally seeks fees pursuant to § 1927 as a sanction for Reiff's alleged "vexatious" litigation. The Court addresses each in turn.

## II. Reiff's Fees

There is no dispute that Reiff prevailed at trial and is entitled to reasonable attorney's fees as a result. So Defendants do not challenge the *fact* of Reiff's entitlement to attorneys' fees,[1] but whether the amount of fees he seeks is "reasonable." (ECF No. 122, PageID.6799–6813.)

---

[1] After receiving Reiff's response to the Township's request for fees and a supplemental brief on the issue of interest, Defendants filed a motion to strike Reiff's motion for fees entirely, correctly pointing out that Reiff's motion for attorney's fees

3

"A reasonable attorney's fee award is one that is 'adequate to attract competent counsel' but does not 'produce windfalls to attorneys.'" *Pearce v. Emmi*, No. 16-11499, 2020 U.S. Dist. LEXIS 79461, at *3 (E.D. Mich. May 6, 2020) (quoting *Blum v. Stenson*, 465 U.S. 886, 893–94 (1984)). District courts have broad discretion to determine that amount. *Wayne v. Village of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994).

Generally, courts begin with determining the "lodestar" amount—"the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hescott*, 757 F.3d at 523–24 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also id.* at 526–27 (citing *Wayne*, 36 F.3d at 517). To start, a reasonable hourly rate is determined by reference to the "prevailing market rates" in the relevant community—that is, the rates for similar services, by lawyers of similar skill, in the community in which the court sits. *See, e.g.*, *Stenson*, 465 U.S. at 894 n. 11. This Court frequently relies on the State Bar of Michigan Economics of Law Survey to assess the prevailing market rate in Detroit. *See, e.g.*, *Latifa v. Harouf Corp.*, No. 23-12779, 2025 U.S. Dist. LEXIS 70667, at *5 (E.D. Mich. Apr. 14, 2025).

After identifying the proper hourly rate, the Court multiplies it by the reasonable number of hours the attorney(s) spent working on the litigation. *Hescott*, 757 F.3d at 523–24 (citing *Hensley* 461 U.S. at 433). To establish the reasonableness of the hours expended on the case, Reiff must "submit evidence of the hours worked,"

---

was filed one day late per E.D. Mich. LR 54.1.2(a). (ECF No. 128, PageID.6883.) Inexcusably, and with potentially dire consequences, Reiff failed to respond. But especially considering the lack of surprise and adequate opportunity for the defense to respond, the Court will not impose such a dramatic sanction for this very brief lapse in diligence. So while a close call, the motion to strike (ECF No. 128) is denied.

*The Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016), which must include "sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008) (citation omitted). This means "excessive, redundant, or otherwise unnecessary hours" must be excluded. *Wayne*, 36 F.3d at 531. And critically, "of the litigation" means paradigmatic litigation work— not, for example, an attorney's efforts to obtain media coverage about the case or highlighting their win. *See Sevy v. Barach*, No. 17-13789, 2022 U.S. Dist. LEXIS 165933, at *15–16 (E. D. Mich. Sept. 14, 2022). Nor are "purely clerical or secretarial tasks" to be billed at the attorney rate. *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)). So if Court finds that certain tasks were not performed "on the litigation," or if the documentation of hours worked is inadequate, it "may reduce the award accordingly." *Sevy*, 2022 U.S. Dist. LEXIS 165933, at *13 (citing *Hensley*, 461 U.S. at 433).

Once calculated, there is a strong presumption that the lodestar amount represents a "reasonable" fee. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1987). But there are some factors courts consider to "evaluate[] the case's unique aspects [and] to determine whether to adjust the award." *Miller v. Suburban Mobility Auth. for Reg'l Transp.*, No. 24-1478/1503, 2025 U.S. App. LEXIS 13058, at *24 (6th Cir. May 27, 2025). Those factors include:

(1) the time and labor required;

5

(2) the novelty and difficulty of the question;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorney;

(10) the 'undesirability' of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (citing *Hensley*, 461 U.S. at 432). That said, the Supreme Court has cautioned that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance." *Pennsylvania*, 478 U.S. at 566; *see also Murphy v. Smith*, 583 U.S. 220, 227 (2018) ("this Court reject[s] undue reliance on the 12-factor test").

6

**A. Reasonable Rates**

Reiff was represented by three attorneys with varying levels of experience and degrees of involvement in the case. As such, they each seek different rates of compensation. The Court considers the reasonable rate for each attorney in turn.

**1. Marko**

The most seasoned attorney on Reiff's litigation team is Jon Marko. Marko has been a practicing lawyer since 2008 and has served as the Principal of his own firm, Marko Law, since 2015. (ECF No. 117-4, PageID.6331.) Marko seeks an eye-catching rate of $1,600 for his work on Reiff's case—a rate that would place him well above the top 95% of practitioners in the Detroit area. (ECF No. 117, PageID.6260, 6255.) Reiff says this rate is justified by Marko's noted success obtaining large jury verdicts, some record-breaking. (*Id.*)

But Marko's accomplishments, while many, do not warrant such a dramatic departure from the 95th percentile billing rate for attorneys in downtown Detroit: $760. (ECF No. 117-3, PageID.6327.) For starters, Marko's sought-after rate is more than *double* the 95th percentile hourly rate for civil rights attorneys statewide ($710) and in the Detroit area ($760). (ECF No. 117-3, PageID.6324, 6327.)

In 2022, this Court awarded Marko an hourly rate of $500, placing him somewhere in the "75th percentile" of similar attorneys. *See Sevy*, 2022 U.S. Dist. LEXIS 165933, at *11. To be sure, Marko has enjoyed noted successes in the years since and received increasingly high fee awards in state court. (ECF No. 117, PageID.6255–62660.) But beyond touting his prior successes, Marko has "failed to

7

'provide any analysis of how [his] high hourly rate [i]s consistent with the prevailing market rates.'" *See Miller*, 2025 U.S. App. LEXIS 13058, at \*25–28.

Considering 95th percentile rates for civil rights attorneys statewide, Detroit practitioners generally, Marko's role in this case, and the verdict obtained vis-à-vis the amount requested, the Court finds that an hourly rate of $900 is appropriate for Marko in this case. *See also Kaur v. Citizens Insurance Company,* No. 17-014352 (Wayne Cnty. Cir. Court, May 1, 2023) (unpublished) (Wayne County Judge Dana M. Hathway awarding Marko an hourly rate of $775); *see also Miller*, 2025 U.S. Dist. LEXIS 13058 at \*25–28 (affirming district court's reduction of counsel's requested hourly rate of $1,500 to $650, noting it was "still . . . a considerable rate" and "almost at the 95th percentile" for attorneys in his practice area).

### 2. Jones

Michael Jones, who served as lead trial counsel for Reiff, also seeks a striking $1,000 per hour rate. Jones, like Marko, has achieved some notable trial successes in his career. (ECF No. 117, PageID.6260–6263.) As lead counsel in this case, he obtained a multi-million-dollar verdict for his client, including an award of punitive damages. However, Jones has been practicing law for just under a decade and his trial successes are fewer than Marko's. This case appears to mark the biggest jury verdict of his career, albeit $70M less than requested. Accordingly, the Court sees it appropriate to place Jones higher than the 75th percentile of practitioners in Detroit ($400) and Wayne County more broadly ($350) yet lower than that 95th percentile (ECF No. 117-3, PageID.6327) and will award Jones an hourly rate of $600.

### 3. Farris

Ali Farris served as second chair to Mr. Jones during trial. Ms. Farris, a relatively new attorney, seeks a rate of $350 per hour. While her experience is limited, Reiff's success in this case, and her apparent contributions to it (*see* ECF No. 117–31) mark a promising start to her career. That said, $306 is the average hourly rate for *all* attorneys in downtown Detroit, including those with many years of experience. (ECF No. 117-3, PageID.6327.) So the Court finds that a rate just shy of that average is more befitting of an attorney at the outset of her career. Accordingly, the Court will award Farris an hourly rate of $300.

## B. Reasonable Hours

The Court next turns to the *hours* expended on the case for which Reiff's counsel seeks compensation.

Setty challenges these hours in three ways. First, he claims that Reiff's counsel "provided very limited detail concerning the tasks supporting his time entries." (ECF No. 122, PageID.6808.)  On the whole, this concern is unwarranted. To be sure, some entries are more detailed than others. But not every entry need be "explicitly detailed" to provide sufficient information for the Court to determine that the "hours charged were actually and reasonably expended" on the litigation. *See Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 552–54 (6th Cir. 2008) (finding records sufficiently detailed where they specified "each entry, the date that the time was billed, the individual who billed the time, the fractional hours billed (in tenths of an hour), and the specific task completed").

Second, Setty says that some of the tasks recorded are not compensable "litigation" work under § 1988. (ECF No. 122, PageID.6811.) On this score, he is right. Marko and Jones both seek compensation for several hours spent drafting press releases and conducting interviews with news outlets regarding the case. (ECF No. 117-26, PageID.6511, 6515; ECF No. 29, PageID.6524, 6525, 6526, 6543.) But these are not costs associated with work "on the litigation" for § 1988 purposes. So the Court will exclude these hours from its lodestar calculation.

Finally, Setty raises concern about the amount of time Marko spent *compiling* the present motion. (ECF No. 122, PageID.6812.) Here again, he has a point. Marko has been advised before that his hours are to be recorded contemporaneously with the work performed. *See Sevy*, 2022 U.S. Dist. LEXIS 165933, at *16. Since his time should already be recorded, "compiling hours worked on case" for the present motion should not necessitate *multiple days* of work. (ECF No. 117-26, PageID.6515.) Nevertheless, Marko reports spending over 13 hours preparing the instant motion and fee summary—a whopping 10% of his total work on Reiff's case. (*Id.*) The unreasonableness of this number is perhaps best evidenced by comparison to his co-counsel, Jones, who worked nearly eight times as many hours as Marko on the case (and thus would presumably need more time to "compile" and review his total hours billed), but who needed far *less* time to compile his fees for the present motion. (ECF No. 117-29, PageID.6543.) So the Court also makes some minor adjustments to reduce Marko's hours request.

Altogether, the Court finds that the reasonable hours worked by Reiff's attorneys on this litigation are as follows: 109 hours by Marko, 820 hours by Jones, and 140 hours by Farris. Accordingly, the lodestar fee award for all of Reiff's attorneys is $632,100 ($98,100 for Marko, $492,000 for Jones, and $42,000 for Farris).

## C. Lodestar Adjustment

As noted above, the lodestar amount, properly calculated, generally accounts for the various factors courts should consider when assessing fees. While adjustment to the lodestar amount may sometimes be necessary, this is not one such case. Setty argues that Reiff's $4 million award (compared to the $81 million sought) and his loss to Clinton Township on summary judgment, should in turn reduce his degree of success and merit a reduction. (ECF No. 122, PageID.6814, 6818.) But the Court considered this in the rate analysis and Reiff's multi-million-dollar verdict is not such a disappointment as to merit a further deduction in his counsel's award. *See Sevy*, 2022 U.S. Dist. LEXIS 165933, at *27 (reducing award on degree-of-success ground where Plaintiff was only awarded $3,000). Nor does Reiff's failed *Monell* claim compel a different result. *See, e.g.*, *Imwalle*, 515 F.3d at 552 ("Work on an unsuccessful claim cannot be considered . . . [but] where the plaintiff's claims for relief involve common facts or related legal theories, such that much of counsel's time will have been devoted generally to the litigation as a whole," the court need not adjust plaintiff's award to "account" for the failed claim.) And to the extent the defects in counsel's time entries merit some hours adjustments (ECF No. 122, PageID.6816–6817), those were made by the Court in its evaluation of the hours reasonably expended on the litigation.

11

As such, the lodestar amount, adjusted for a reasonable rate and reasonable hours expended on the case, properly accounts for these considerations. *See, e.g.*, *Imwalle*, 515 F.3d at 556 (affirming district court decision to "decline" lodestar adjustment based on plaintiff's "failure to prevail on all of his claims"); *Murphy*, 583 U.S. at 227 (referring to the lodestar rate as the "guiding light of our fee shifting jurisprudence" and expressing concern over "unguided and freewheeling" deviations from it.)

### D. Interest

There is one final issue related to the amount of Reiff's requested fees the Court must address. Over two months after filing his initial motion for fees, Reiff filed a "supplemental brief" adding that he should be awarded both pre- and post-judgment interest on any award of attorney's fees and costs. (ECF No. 127.)[2] Defendants oppose that request. (ECF No. 128.)

When a money judgment is awarded, the prevailing party is entitled to interest accrued post-judgment. 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). Pre-judgment interest, however, "'remains essentially [a matter] for the discretion of the trial judge.'" *Pung v. Depriest*, No. 20-13113, 2026 U.S. Dist. LEXIS 69850, at *4 (E.D. Mich. Mar. 31, 2026) (quoting *EEOC v. Wooster Brush Co. Emps. Relief Ass'n*, 727 F.2d 566, 579 (6th Cir. 1984)). "An award of prejudgment interest is not punitive; instead, it is used to

---

[2] Defendants ask the Court to strike that brief, which they characterize as an improperly styled "supplement," for failure to comply with the Court's case management requirements. For the reasons described above, that request is denied.

12

fully compensate the plaintiff for the loss of the time-value of money." *Umfress v. City of Memphis*, No. 17-02568, 2020 U.S. Dist. LEXIS 261844, at *2 (W.D. Tenn. Oct. 19, 2020). Its purpose is "to compensate plaintiffs for the 'lost interest value of money wrongly withheld'" and to make the prevailing plaintiff "whole." *Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 686 (6th Cir. 2013) (citing *United States v. City of Warren*, 138 F.3d 1083, 1096 (6th Cir. 1998)). Cases in which prejudgment interest is somewhat common are those involving awards of back-pay under Title VII or other money damages. *See EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836, 842 (6th Cir. 1994)). Pre-judgment interest "should not be awarded if it would result in the overcompensation of the Plaintiff." *Hopkins v. Nichols*, No. 19-00059, 2024 U.S. Dist. LEXIS 164386, at *2 (M.D. Tenn. Sept. 12, 2024).

The Court acknowledges that this case has been long pending. And the Court, by its own delay, did not docket a final entry of judgment for a month after trial concluded. (ECF No. 111.) But there are no case-specific factors here that merit pre-judgment interest. *See, e.g.*, *Schumacher*, 711 F.3d at 686. Nor does Reiff's skeletal supplemental brief on the issue identify any. (ECF No. 127.) Reiff did not seek economic damages; and as another court aptly observed, "prejudgment interest on non-economic damages does not accord with the general purpose of prejudgment interest." *Minchella v. Brantley*, No. 24-12680, 2025 U.S. Dist. LEXIS 207168, *24–25 (E.D. Mich. Oct. 21, 2025).

Thus, Reiff's request for pre-judgment interest is denied, but post-judgment interest will be granted. Accordingly, Reiff shall submit supplemental briefing on the

13

total amount of post-judgment interest owed pursuant to 28 U.S.C. § 1961 by June 15, 2026.

### III. Clinton Township's Fees

The Court turns next to Clinton Township's request for fees under §§ 1988 and 1927.

Recall that under § 1988, the Court may only award fees to a prevailing defendant, like the Township, if the plaintiff's claims "were 'frivolous, unreasonable, or without foundation.'" *Wynn v. City of Covington,* No. 25-5617, 2026 U.S. App. LEXIS 10374, at *4 (6th Cir. Apr. 8, 2026) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)). An award of fees under § 1988 is an "extreme sanction . . . limited to truly egregious cases of misconduct." *Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001). The Sixth Circuit has admonished courts to exercise this discretion with caution, noting that "too liberally awarding fees 'may have a chilling effect on potentially meritorious civil rights plaintiffs.'" *Wynn*, 2026 U.S. App. LEXIS 10374, at *13 (Stranch, J., concurring) (citing *Shelton v. City of Taylor*, 92 F. App'x 178, 185 (6th Cir. 2004)).

This Circuit has nevertheless identified two circumstances in which such an award may be appropriate: (1) where the plaintiff's position was without *any* evidentiary support, or (2) where the "case's weaknesses rise to 'such magnitude that the plaintiff's ultimate failure is clearly apparent from the beginning or at some significant point in the proceedings after which the plaintiff continues to litigate.'" *Id.* at *4 (citing *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985)).

14

Accordingly, whether to award a prevailing defendant attorneys' fees is a fact specific inquiry through which district courts have broad discretion and may rely on their "understanding of the litigation." *See Kidis*, 976 F.3d at 721. In conducting this inquiry, courts must resist the "understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg Garment Co.*, 434 U.S. at 421–22.

**1.**

In a case where the Court has struggled with a few challenging motions, this is not one of them. Although Clinton Township prevailed at summary judgment, this is not an "egregious" case in which § 1988 fees are appropriate.[3]

At summary judgment, the Court dismissed Reiff's failure-to-train theory, finding, upon review of Setty's training file and deposition testimony regarding training procedures, that the Township had adequately trained Setty on its use-of-force policy. (ECF No. 55, PageID.3976.) Reiff's belief that this training was

---

[3] Reiff—a violator in his own right—argues that the Township's motion is untimely pursuant to Local Rule 54.1.2(a), which mandates that a motion for attorney's fees be filed "no later than 28 days after entry of judgment." And in Reiff's view, "judgment" was entered against the Township through the Court's order granting summary judgment on August 13, 2025. (ECF No. 55.) Not so. Under Federal Rule of Civil Procedure 58, judgment arising from a grant of summary judgment must be "set out in a separate document." Fed. R. Civ. P. 58(a). The Court did not enter such an order after issuing its order in August 2025, nor did the order itself specify that it constituted entry of judgment. The Court entered final judgment in the case on January 8, 2026, and, in error, omitted the Township's name from the case caption. But this separate order constitutes the "entry" of judgment for both Defendants. Accordingly, the Court finds the Township's motion timely.

inadequate, however, was not wholly unfounded. His theory of the case, after all, was that a Township police officer struck a non-resisting, non-threatening suspect with such extreme force as to rupture his eyeball. Despite being trained on the use of force policy, Setty ultimately could not "describe" that policy during his deposition, he was unfamiliar with the phrase "force options," and admitted he had not received "de-escalation training." (*See* ECF No. 49, PageID.2988 (Reiff's response to Defendants' summary judgment motion).) The Court ultimately found that these potential deficiencies in Setty's knowledge did not amount to "deliberate indifference" by the Township. (ECF No. 55, PageID.3976.) But that does not mean the argument was meritless. Rather, Setty's arrest conduct and later deposition testimony provided a reasonable basis upon which Reiff could make a non-frivolous failure-to-train claim.

For this reason alone, the Township is not entitled to fees on Reiff's losing *Monell* claim. Even assuming the Court needs to address Reiff's "alternative" *Monell* claim of an unofficial custom, policy, or practice of tolerating Fourth Amendment violations by the Township, while perhaps weak, that claim, too, was not wholly meritless. (ECF No. 49, PageID.2989.) Believing Setty had a pattern of excessive force incidents that were not addressed with "corrective actions," Reiff reasonably argued that this was indicative of a broader custom within the Township. (*Id.*) But Reiff did not fully develop this argument on summary judgment, or support it with "proof," so the Court ultimately dismissed the argument. (ECF No. 55, PageID.3978.) That Reiff's unofficial policy or custom argument was inartful and ultimately unsupported by the record does not mean it was levied unreasonably "or without foundation."

*Wynn*, 2026 U.S. App. LEXIS 10374, at *4 (quoting *Christiansburg Garment Co.*, 434 U.S. at 421).

Put simply, there is no reason to believe Reiff's motive in filing suit against the Township was "to waste everyone's resources." *Whiting*, 2026 U.S. App. LEXIS 7481. Nor is there any proof that his claims against the Township, deeply interwoven with his ultimately successful claim against Setty, were "baseless." (ECF No. 114, PageID.6220.)

An attorney does not engage in vexatious misconduct by making an ill-fated, but ultimately reasonable claim and seeing it through discovery. So the Township's request for fees under § 1988 is denied. *See, e.g.*, *Kidis*, 976 F.3d at 722 (affirming denial of defendant's fees under § 1988 after prevailing at summary judgment on an excessive force claim, because plaintiff's claims "were made with a sufficient ring of plausibility").

**2.**

For much the same reason, Clinton Township is not entitled to an award of attorney's fees as a sanction under § 1927.

A request for sanctions under § 1927 is subject to a similarly demanding standard as a request for fees for a prevailing defendant under § 1988. Section 1927 sanctions are only "appropriate where an attorney has engaged in some sort of conduct that, from an objective standpoint, 'falls short of the obligations owed by the member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" *See In re Stollman*, No. 09-11487, 2010 U.S. Dist. LEXIS 26574,

17

at \*4 (E.D. Mich. Mar. 22, 2010) (quoting *Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2002)).

Here, too, the Sixth Circuit has identified some scenarios in which a § 1927 sanction may be appropriate: "when (1) 'an attorney knows or reasonably should know that a claim pursued is frivolous,' (2) 'an attorney knows or reasonably should know' 'that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims,' or (3) the attorney's conduct fell 'short of the obligations owed by a member of the bar to the court.'" *Whiting*, 170 F.4th at 446 (citations omitted). A party seeking sanctions need not establish "bad faith" on the part of the misbehaving attorney, but "must at least knowingly disregard the risk of abusing the judicial system, not be merely negligent." *Kidis*, 976 F.3d at 723.

"The mere fact that an action is without merit does not amount to bad faith." *Id.* (citing *Stalley ex rel. United States v. Mountain States Health All.*, 644 F.3d 349, 352 (6th Cir. 2011)). But as described above, Clinton Township offers little explanation as to why it believes Reiff's claim was made in "bad faith" aside from the fact that it failed. Nor does it identify any ways in which Reiff impermissibly extended or otherwise inappropriately litigated this case. Indeed, prior to summary judgment, the docket reflects that no motions were filed by or against Reiff. Rather, it is the Township's present motion—bare-bones in its allegations and formulaic in its recitals

18

of the law—that appears "baseless" and risks "needlessly" multiplying the litigation.[4]

For these reasons, the request for sanctions under § 1927 is easily denied.

## IV.

Finally, the clerk taxed costs awardable to Reiff in the amount of $8,118.00. (ECF No. 120.) Setty objects to the inclusion of certain subpoena fees he that contends are not taxable. (ECF No. 123.) These include costs for unnecessary subpoenas served on the Defendants as well as skip tracing and rush fees for subpoenas served on several other witnesses as well. (*Id.* at PageID.6830–6831 (citing *E.E.O.C. v. Ford Motor Co.*, No. 11-13742, 2012 WL 5947649, at *1 (E.D. Mich. Nov. 28, 2012) (subpoena rush fees are not properly taxed in bill of costs and reduced).) So Setty seeks to reduce the taxed costs by $1,575.00. (*Id.* at PageID.12.)

"[T]he party objecting to the clerk's taxation has the burden of persuading the court that it was improper." *BDT Prods. v. Lexmark Int'l, Inc.*, 405 F.3d 415, 420 (6th Cir. 2005), *abrogated in part by Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, (1998) (citing Wright, Miller, & Kane, *Federal Practice and Procedure*, Civil 3d § 2679 (1998)). That was made easier here because Reiff did not respond to the motion and thus, it is unopposed. *See* E.D. Mich. LR 7.1(c). Additionally, while the Eastern District of Michigan Bill of Costs Handbook includes as taxable the service fees for

---

[4] The apparent contradictions in Defendants' post-judgment briefing illustrate the point. In the Township's motion for attorney's fees, counsel argues "this case involved the interrelationship of multiple claims and party-Defendants," and thus contained "relatively complex subject matter." (ECF No. 114, PageID.6221.) But in opposition to *Reiff's* request for fees, counsel argues "this was a straight-forward case largely driven by the injury incurred by Plaintiff that did not present complex questions of law." (ECF No. 122, PageID.6806.)

trial subpoenas, it does not further elaborate as whether that covers rush fees or fees for locating the witness. And while Reiff provided invoices for these fees, he has now failed to provide an explanation as to why these fees were necessary or reasonable. *See, e.g., Ramirez v. Rosalia's Inc.*, No. 20-23270, 2023 U.S. Dist. LEXIS 90133, at \*12 (S.D. Fla. May 23, 2023) ("Plaintiff has not presented the Court with any case law supporting the taxation of skip trace services under Section 1920. Accordingly, the skip trace fees will be excluded from the costs award.") (citing cases).

Thus, Defendant's motion for review of costs is GRANTED and his objections to the amount of taxed costs (ECF No. 123) are SUSTAINED.

## V.

For the reasons provided above,

- Reiff's Motion for Attorney Fees and Costs (ECF No. 117) is GRANTED in PART and Reiff is hereby ORDERED to submit supplemental briefing on the total amount of post-judgment interest due by June 15, 2026.

- Clinton Township's Motion for Costs and Fees (ECF No. 114) is DENIED;

- Defendants' Motion to Strike Reiff's Motion for Fees and Supplemental Brief (ECF No. 128) is DENIED; and,

- Setty's Motion for Review of Taxed Costs (ECF No. 123) is GRANTED.

SO ORDERED.

Dated: June 1, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
United States District Judge
